UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIANNE BASSHAM o/b/o P.Z.J.L.B.,

                Plaintiff,

v.    **DECISION AND ORDER**
                                        13-CV-854

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.   In this action, Plaintiff Julianne Bassham challenges an Administrative Law Judge's ("ALJ") determination that her minor son, P.Z.J.L.B. ("PB"), is not disabled within the meaning of the Social Security Act ("the Act").

2.   On June 28, 2010, Plaintiff filed an application for Supplemental Security Income ("SSI") on behalf of PB, who was then age ten, claiming he had been disabled since January 1, 2002 due to attention deficit/hyperactivity disorder ("ADHD"). (R. 118-25, 127.)[1] The application was denied on July 9, 2010. (R. 70-75.) Plaintiff then requested a hearing, which was held before ALJ Stanley A. Moskal, Jr. on February 10, 2012. (R. 41-68.) Plaintiff and PB were represented by counsel at the hearing, at which the claimant's mother testified. (Id.)

3.   The ALJ considered the Title XVI application *de novo* and, on May 1, 2012, issued a written decision finding that PB was not disabled. (R. 22-34.) The Appeals Council denied Plaintiff's request for review on June 27, 2013. (R. 1-4.) This civil action, commenced on August 23, 2013, challenges the Commissioner's final decision.[2]

---

[1] Citations to the administrative record are designated as "R."

[2] The ALJ's February 10, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

4. On February 4, 2014 and March 6, 2014, respectively, the Commissioner and Plaintiff each filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9 and 13.) The motions were fully briefed on March 11, 2014, at which time this Court took the matter under advisement. For the reasons set forth below, the Commissioner's motion is granted and Plaintiff's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plaintiff v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v.

Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

       7.    Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations set forth a three-step sequential process the ALJ must follow in evaluating SSI claims for minor children. See 20 C. F .R. § 416.924. First, the ALJ must determine whether the child has engaged in substantial gainful activity. If so, the child is ineligible for SSI benefits. 20 C.F.R. § 416.924(b). If the child has not engaged in substantial gainful activity, the second step requires an evaluation of whether the child suffers from an impairment or combination of impairments that cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c). If the child's impairment is severe, the ALJ then must determine whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1).

       8.    If the ALJ determines that the child's impairment or combination of impairments does not meet or equal any listing, the ALJ must then assess whether the child's impairment(s) "functionally equal the listings" by considering how the child functions in terms of the following six "domains:"

      (i) acquiring and using information;
      (ii) attending and completing tasks;
      (iii) interacting and relating with others;
      (iv) moving about and manipulating objects;
      (v) caring for oneself; and
      (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains, or an "extreme" limitation in a single domain. 20 C.F.R. § 416.926a(a); see Ramos v. Barnhart, No. 02 Civ. 3127, 2003 U.S. Dist. LEXIS 7463, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003). A "marked" limitation exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      9.     Applying the sequential evaluation in the instant case, the ALJ found: (a) PB had not engaged in any substantial gainful activity since February 11, 2010 (R. 25); (b) he has ADHD and behavior problems which constitute severe impairments under the Act (id.); (c) PB did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (id.); and (d) PB did not have an impairment or combination of impairments that functionally equals the severity of the listings (id.)

10. Plaintiff argues that the ALJ did not consider the entire record; in particular he failed to acknowledge certain evidence, misinterpreted a key piece of evidence, and failed to state reasons for finding claimant's mother was not fully credible. Plaintiff also contends the determinations that PB had no marked limitations in his ability to acquire and use information, attend and complete tasks, interact and relate with others, and care for himself are not supported by substantial evidence. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error that would require remand.

11. The standard applicable to Plaintiff's first group of arguments is as follows. "It is the rule in [the Second Circuit] that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record'" in light of 'the essentially non-adversarial nature of a benefits proceeding.'" Pratts v. Chater, 93 F.3d 34, 37 (2d Cir. 1996 (quoting Echevarria v. Sec'y of Health & Human Svcs., 685 F.2d 751, 755 (2d Cir. 1982)). Despite this affirmative duty, the ALJ need not expressly consider every last piece of evidence or state every reason justifying a decision:

> Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id. (citation omitted).

Brault v. SSA, 683 F.3d 443, 448 (2d Cir. 2012). An ALJ's implied rejection of evidence is sufficient, so long as the court is satisfied, on the analysis the ALJ does provide, that the evidence was considered. Id. Moreover, even where it appears an ALJ has failed to consider all of the relevant evidence, "the court can still affirm [the] decision if this error is deemed to be harmless." Seltzer v. Comm'r of Soc. Sec., No. 07-CV-0235, 2007 U.S. Dist. LEXIS 92778, 2007 WL 4561120, at *10 (E.D.N.Y. 2007). An error is considered harmless, for example, where consideration of the evidence would not have changed the outcome. Id.

5

12. Plaintiff contends the ALJ committed plain error because his decision does not acknowledge reports received from three teachers who had contact with PB, Ms. Tolbert, Mr. Reynolds, and Mr. Heil.

Social Security Ruling 06-03p recognizes that teachers often have close contact with and personal knowledge of minor claimants, and the expertise to make judgments about an individual's impairments, activities, and level of functioning over a period of time. 2006 SSR LEXIS 5, at *8-9, 2006 WL 2329939, at *3. In weighing opinions from such non-medical sources, the ALJ will consider: (i) the length of the relationship and frequency of contact; (ii) the consistency of the opinion with the record as a whole; (iii) the evidence presented in support of the opinion; (iv) whether the source has expertise related to the claimant's impairments; and (v) any other factors that tend to support or contradict the opinion. 2006 SSR LEXIS 5, at *11.

Ms. Tolbert taught PB in both 5th and 6th grades at Enterprise Charter School and was involved in implementing test and classroom accommodations (a section 504 plan) for PB. (R. 200-203.) In discussing the behavioral issues that prompted these accommodations, the ALJ specifically referenced the second of two reports Ms. Tolbert had prepared. (R. 26, citing R. 412-13.) Later in his decision, the ALJ concluded that PB "does well when he takes his medication and it is evident from the file that he does not always do this." (R. 30.) In support, the ALJ cited two sources which each referred to Ms. Tolbert's observations that it was very obvious to her when PB was on his medication as he "does a great job with everything," but behavioral situations occur when he seems to be "off." (id., citing R. 405-410, 1065-66, see R. 147)). Thus, it is evident the ALJ acknowledged and considered Ms. Tolbert's opinions, and there is no plain error in this regard.

PB was expelled from Enterprise Charter School due to behavioral issues and was later enrolled at Futures Academy. Three teachers from Futures prepared questionnaires regarding PB, Ms. Schwallie, Mr. Reynolds, and Mr. Heil. (R. 268-75, 277-84, 286-93.) Messrs. Reynolds and Heil each taught PB one subject daily, and Ms. Schwallie, an alternate education instructor, taught him four classes daily. (Id., see also R. 1075-76.) The ALJ afforded more weight to Ms. Schwallie's assessment because she was PB's "daily teacher for four subjects and . . . she would have the greater contact with the child." (R. 29.) While Plaintiff correctly notes the ALJ did not expressly acknowledge the Reynolds and Heil reports, this Court is satisfied, on the analysis provided, that the ALJ considered and implicitly rejected them.

13. Plaintiff next contends that the ALJ misinterpreted key evidence about PB's medication regimen that appears in a letter from Rev. Kinzer M. Pointer to PB's attorney, dated February 14, 2012. (R. 1065-66.) Rev. Pointer had been the Coordinator of Parent and Community Services at Enterprise Charter School during the time PB was a student there. He stated, among other things:

> I knew that [PB] was on medication to help him manage his behavior and Ms. Tolbert often indicated that [PB] had confided in her that he had not taken his medication. Upon engaging [PB] in conversation outside of the classroom setting I discovered that he was rarely honest with Ms. Tolbert about the administering of his medication. He confided that she was easier on him when he told her that he had not taken them . . . .

(R. 1065.) The ALJ cited this letter, stating "the claimant confided to others that he was not taking his medication and therefore, this was the reason his behavior was not being managed in the classroom environment." (R. 26.) According to Plaintiff, this is an "untenable reading of Reverend Pointer's letter" which, properly read, proves that PB took his medication and, in fact, the medication was not effective. (Docket No. 13-1 at 26). In the Court's view, the most that can be gleaned from the entirety of Rev. Pointer's letter is that PB told different people

7

different things about his medication compliance. In short, I cannot conclude that the ALJ's accurate description of a portion of the letter constitutes plain error requiring remand. To the extent this letter factors into Plaintiff's further arguments as to the substantiality of the evidence supporting the ALJ's disability determination, it will be revisited.

14. During the ALJ hearing, Plaintiff testified that PB will not sit still, is off task, unorganized, defiant, disrespectful of authority, and has anger and impulsivity issues. She reported that PB fights with friends and siblings, once pulled a knife on his sister, and has been kicked out of different groups, thrown off the school bus and suspended from school. (R. 26.) The ALJ acknowledged that PB's impairments could produce such symptoms, but found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms was not entirely credible. (R. 28.) Plaintiff contends the ALJ committed error because he did not state the reasons for his credibility assessment.

In making a determination as to disability, an ALJ must consider subjective statements regarding the claimant's symptoms. See Sweatman v. Callahan, No. 96-CV-1966, 1998 U.S. Dist. LEXIS 1585, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998). In so doing, an ALJ retains discretion to evaluate the credibility of those statements. See Marcus v. Califano, 615 F.2d 23, 27-28 (2d Cir. 1979). "A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260-61 (2d. Cir. 1988). To this end, SSR 96-7p requires that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements

and the reasons for that weight." 1996 SSR LEXIS 4, at *11, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

15. After summarizing Plaintiff's February 2012 testimony, the ALJ examined the evidence, including therapy records from Child and Adolescent Treatment Services (CATS). The ALJ noted that after PB's medication was changed in January 2011, there were numerous instances where Plaintiff reported PB was improving overall, was making good choices, staying out of trouble, doing his chores, and avoiding conflicts in his new school, though completing homework remained an issue. (R. 27, citing 883-84, 909-10, 918, 961-62.) Such inconsistencies between hearing testimony and statements made to treating sources properly factor into the credibility assessment. 1996 SSR LEXIS 4, at *15-16.

The ALJ also examined PB's compliance with treatment. CATS' records indicate PB's symptoms were improving, but his progress was hindered by missed appointments and inconsistent treatment. (R. 27.) Plaintiff argues that, to the extent the ALJ drew an adverse inference from her failure to consistently pursue treatment for PB, he was required to first consider what reasons she may have had. Because those reasons—Plaintiff is a single mother with other children who had a busy schedule with conflicting appointments—are memorialized in the CATS records the ALJ referred to in his decision, the Court is satisfied the ALJ reviewed and consider them.

Finally, the ALJ assigned significant weight to a June 2010 consultative psychiatric evaluation which found that, in most areas, PB's functioning was age-appropriate and within normal limits. Thus, taken as a whole, the ALJ's analysis is sufficiently specific to make clear the reasons for finding Plaintiff's testimony regarding the intensity, persistence, and limiting effects of PB's symptoms not entirely credible.

16. The Court now turns to the question of whether the determination that PB's impairments do not functionally equal the listings is supported by substantial evidence. Plaintiff first challenges the ALJ's finding that PB had a less than marked impairment in the domain of acquiring and using information, arguing the ALJ: failed to consider the opinions of PB's teachers, Mr. Reynolds, Mr. Heil, and Ms. Tolbert; applied an incorrect legal standard in rejecting the opinion of school administrator Reczek; and failed to consider the entirety of Ms. Schwallie's opinion. The ALJ's consideration of the Reynolds, Heil, and Tolbert opinions has been addressed and requires no further discussion.

Ms. Reczek, Assistant Principal at Futures Academy, opined that PB had "a serious problem" in ten classroom measures regarding the acquisition and use of information, such as reading and comprehending written material, and comprehending and doing math problems. (R. 296.) Ms. Reczek provided no explanation or information for her rating (id.), but did say that she saw PB frequently "regarding his inability to stay focused, distracting others, roaming" (R. 299). The ALJ gave little weight to Ms. Reczek's opinion, concluding it was based mainly on PB's behavioral issues, and he afforded more weight to the opinion of Ms. Schwallie, who taught PB four subjects per day. (R. 29.) Ms. Schwallie stated that PB, who was then in 7th grade, was reading at the 8.2 level, performing math at the 7th grade level, and was a bright young man who was able to work independently and did an excellent job in completing and handing in classwork, but benefitted from working in smaller groups and had an ongoing issue with homework. (R. 29, citing R. 268-75, 1075-76.) PB was under Ms. Schwallie's instruction during a period when his medication was being adjusted. The ALJ further noted that, once that process was complete, PB returned to his regular classroom where he appeared to be

succeeding. (R. 27 citing R. 1073.) These and other cited records amply support the ALJ's determination on the first domain.

17. In determining a child's limitation in the domain of attending and completing tasks, the ALJ considers the claimant's ability to "focus and maintain [his] attention, and how well [he can] begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). The ALJ concluded that PB had less than a marked limitation in this domain, stating that PB "does well when he takes his medication and it is evident from the file that he does not always do this, negatively impacting his ability to control his behavior and attend and concentrate." (R. 30.) Plaintiff again asserts the ALJ neglected probative contrary evidence, specifically the Reynolds, Heil, and Reczek opinions, and Rev. Pointer's opinion that PB's condition was not controlled by medication.

As previously noted, the Court is satisfied that the ALJ considered these opinions as required, and either expressly or implicitly declined to afford them persuasive weight. Moreover, there is evidence in the record that PB did not always have or take prescribed medication, did not consistently attend therapy, and "does a great job with everything" when he takes his medication. Where the ALJ's finding is supported by substantial evidence—i.e., more than a mere scintilla—it must be sustained, even if contrary evidence exists that supports the plaintiff's position. Rosado, 805 F. Supp. at 153.

18. In the domain of interacting and relating with others, the ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). The ALJ

acknowledged there was evidence that PB had problems with aggressive behavior, school suspensions, and an expulsion from school, but noted the considerable improvement PB exhibited when on medication and concluded PB had less than a marked limitation in this domain. (R. 31.) The ALJ also gave significant weight to the psychiatric evaluation of consultative examiner Santarpia, who concluded that PB could adequately maintain appropriate social behavior and was only mildly impaired in interacting adequately with peers and adults. (R. 27, 31, citing R. 397-401.) Plaintiff contends no reasonable mind can accept the ALJ's findings due to his ongoing failure to properly credit the opinions of Reynolds, Heil, Reczek, and Pointer. Having reviewed the record, the Court finds there is substantial evidence to support the ALJ's finding with regard to this domain.

  19. Lastly, Plaintiff contests the ALJ's finding that PB has less than marked limitation in the ability to care for himself. In this domain, the ALJ must consider how well the child maintains a healthy emotional and physical state, including how well he copes with stresses in his environment, and whether he takes care of his health, possessions, and living area. 20 C.F.R. § 416.926a(k). The ALJ noted that a non-examining state agency consultant who reviewed PB's file concluded he had "no limitation" in this domain, but that Ms. Schwallie, who had daily contact with PB, opined that he could get frustrated and impatient at times and, while he tried to remain respectful and calm, had some difficulties doing so. (R. 33.) According to Plaintiff, the ALJ merely pointed to conflicting evidence without providing any explanation for his conclusion.

  While the ALJ did not provide additional reasoning at this juncture, his reasons for finding less than a marked limitation in this domain are apparent from reading the decision as a whole. First, it is clear the ALJ declined to accept the state agency's determination of "no

limitation," but to credit Ms. Schwallie's report of "some concerns." (R. 33.) The ALJ already had explained his reasons for crediting Ms. Schwallie's opinion, and had repeatedly noted that, although the record clearly contains evidence of concerns in a number of functional areas, there is also evidence of PB's documented improvement in all domains while on medication. Thus, the Court finds the ALJ's decision sufficiently makes clear the reasons for his findings, which are supported by substantial evidence.

\* \* \* \* \* \* \*

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: August 12, 2014
       Buffalo, New York

                                             /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                                  Chief Judge
                                        United States District Court